Good afternoon, Your Honor. May it please the Court, my name is Pamela Urena and I represent the appellants in this matter. I'll give four minutes per rebuttal. You've got a clock there, just keep tracking your time. Thank you, Your Honor. The issue before the Court this afternoon is whether an individual may escape liability under Title I issues of the Electronic Communications Privacy Act and under the Computer Fraud and Deceit Act by drafting and utilizing an unlawful and imbalanced subpoena in order to gain access to the content of private email communications stored on a remote server. The answer to that question, Your Honor, is no, an individual cannot escape liability under those two federal statutes. What are those statutes against the private right of action? Under the Electronic Communications Privacy Act, Your Honor, there is a subsection which I don't have in mind right now, but which creates a private civil cause of action for conduct that is otherwise criminalized under the statute. And that conduct is intentionally accessing without authorization a facility upon which or through which an electronic communication service is provided. Here the access was... Explain to me exactly how the access happened. In this case, the underlying action is a district court action that's venued in the Southern District Court. I know what the underlying action is. What exactly happened? How was the... The ISB had these messages on its server, right? Right. These individuals... Did the defendants get access to the server? Defendants drafted and utilized what was held to be an invalid and unlawful subpoena to get access to the server. How did they? Did they actually connect to the server electronically? Yes. Yes, Medicaid, in response to the unlawful subpoena, provided a URL which provided a sample of 339 some-odd private emails. There are eight copies of all those emails. That's right. Put them on a different server. Put them on a URL on its server and allowed access to that URL. Right. So, I understand. They connected to that URL. The URL linked to storage on a different server. On the same server. On Medicaid's same server, is my understanding of the facts. Medicaid had... I know it was a web server, not a mail server. The emails were stored on the mail server and they copied them over. And so they copied the documents saying, now you're going to put it in this file cabinet and you're going to look at the copies and we're there. Isn't that what happened? They never actually had access to the mail server. They had access to Medicaid's server. What Medicaid did was copy a portion of the emails that were contained on its mail server and placed it on the other portion of its server, to which then it gave the appellees and the staffs an access through... So, they wouldn't actually look at the emails. The copies were made and they were put in a different server. My question is, how is the server that they actually access, the one where they look at the emails, how are they going to find the server that's involved in electronic communications? It's a facility under the statute through which electronic communications services are provided. But they didn't actually do that. They didn't actually look at the mail on the mail server. The mail was copied to someone else and they gave them access to copies of the emails. I understand what you're saying, Your Honor, but the statute doesn't draw a distinction between which of the two servers is accessed. It has to be a facility that's used for... Through which an electronic service is provided. Right, so it has to be something in the mail server. It has to be a facility that's used for providing electronic mail services. If what they did is they take copies of all those emails and put them somewhere else, then they're no longer on the server that's used for electronic communications. There's nothing in the statute, Your Honor, nor in any of the case law that limits the definition of an electronic... a facility that provides an electronic service to a mail server. Let's say I have a server at home, okay? And let's say they made copies of all those emails and they called me up and they said, hey, you know, we need someplace to store a bunch of documents. Do you mind if we put it on your server? You know, I have nothing to do with that kind of thing. It's my own personal server. Would you still say that if they... And then they made a link to my server where the things are... where the emails are copied. They said, okay, you can look at all those emails because it's the server. Would you still maintain that that was a facility that's used for communications? Yes. Your server is a facility within the meaning of the statute. How possibly can that be? Because if you look at the language of the statute, what it says is that liability attaches when an individual, such as appellees in this case, intentionally accessed without authorization through which an electronic communication is provided. Your server, in that context, in the hypothetical that you give, is a facility through which an electronic communication is provided. Just because the emails, the copies of the emails are stored there, even though they're not going anywhere, they are not coming from anywhere, even though that is not used in any sense for electronic communications. Yes, Your Honor, and in your hypothetical, to the extent that Netgate would support to authorize access to your server, that authorization would be invalid because it doesn't have the ability to authorize access to your private server. No, no. If you limit it, it's like they got my agreement. Presumably the people accessing got your agreement. Right. I understood your hypothetical to be that Netgate authorized the access. Yes. Netgate said, look, we're going to put it on somebody's server that's completely unconnected with us. It's another server being used for totally other reasons. We're going to make copies of these emails, and we're going to store them there. So we're making photocopies of documents and saying, okay, we're going to put the photocopies in a file cabinet over there in the corridor. If you want to look at them, you can go to look at them. And I guess what I'm wondering is if the defendants only looked at the emails when they were stored on this other server, which is not a mail server, does it still fall within the language of the statute? Whether it's my personal server, or it's their server, or it's a server of space they rented from somewhere else. I'm just wondering how that becomes access to a facility that's used for electronic communications. Because to the extent that the electronic communication is stored on your server, within the meaning of the statute, it is a facility through which an electronic communication is stored. So in your view, as soon as something that is an email is copied onto any server, that becomes a facility for electronic communications. By virtue of the fact that a copy was made of a document that was an email. That's your position. Yes, it is my position, but those aren't the facts of this case. In this case, NetGate wasn't providing access to a different server. Well, my impression of it was. My understanding is that it was a web server. It was not the mail server. It was a different computer, but maybe that. As alleged in the complaint, the server to which NetGate allowed access was its own server. Whether it was the same mail server that was used for storing emails. It may be theirs, but not every server they have is a mail server. They can have servers for a web server, they can have servers for a file server, all sorts of servers that have nothing to do with its business of providing a different ISP. And I take it what you're saying is that every server owned by an ISP then becomes a server covered by the statute. Yes. Okay. Let me take you then to 2701C, which provides an exception for liability under 2701A, and I'll read it as many times as I can probably more, by a person or entity providing a wire or electronic communication service. And you had an authorization here, it seems, by NetGate. So why is that an exception to liability? There was an authorization, Your Honor, by NetGate, but in this case NetGate's unilateral decision to provide a sample of the contents of its users' private electronic communications doesn't fall within that exception. Why not? First of all, that exception provides 2701C provides two different exceptions. Right.  User and provider. User and provider. So as to subsection 2, it's the user of the service that can authorize access to the contents of his or her electronic email. They're connected by a nasty word, or. Right. As to subsection 1, that authorization is understood in view of the policy underlying the statute has to mean that it's lawful and otherwise valid authorization. It can't be the case that the authorization that is procured is invalid authorization, which is the case that happened here. It wasn't invalid. They had a subpoena. It was a subpoena that was held to be patently unlawful. Yeah, that's an offense. At the time of providing, they had a court order, which a subpoena is, court order said provide access. How could that be unlawful? Did they comply with the court order? Your Honor, under that reasoning, then, a slightly different set of facts illustrates the point. You don't agree with that reasoning? No. I'm sure I wouldn't. If the appellees in this case had rather than issued a subpoena that was later found to be unlawful and instead had sat at their computer and created a subpoena that they knew to be unlawful, there's no pending litigation. The person just thinks I need a creative way to get into the server. I don't know how to hack into a computer, so instead what I'm going to do is create a litigation that doesn't exist, create Northern District of California subpoena Leatherhead, create the mandate to Medicaid to turn over the documents, serve that on Medicaid. That might well be a different case. You have a totally fraudulent subpoena. You have no case at all. Or maybe they had it issued by the Western District of California, let's say, or it doesn't exist. Not yet. Or from the 12th Circuit. Not yet, Your Honor. That might well be a different case, and we certainly want to think about that when it comes along. But what we have here is a real case, and we have a real subpoena, that, until quashed by a court, is a valid court order. And I am having difficulty. It's a real court, it's a real case, it's a real subpoena. On its face, it is valid. But it is, in fact, valid, and has the force of law, unless and until it is quashed by the court. So you presented an interesting hypothetical, but how do you deal with your actual case, where you have an actual court order? An actual court order that is invalid, and I appreciate the point that the invalidity and the unlawfulness was found after the subpoena was issued, but there should be no reason under the statute... Let me just quibble with you a little bit on the word invalid. There are two kinds of meanings that invalid could have. Invalid could mean on its face, the kind of invalid you were talking about earlier. It's not even issued by a real court. There's no real case. But that's not what we're talking about. We're talking about invalidity in the sense that it is a valid court order, and you must comply with it. Court orders are like that, until something else happens. So it's not invalid in the first sense, until the court acts to undo it. The subpoena is valid in every sense of the word. It's no less valid than a district court order that may be subject to reversal of appeal. Is it? What did it do with the fact that this information was published before the maternity, and there was no public notice to the other parties? If I might answer Jessica's question before I answer yours. I think they are linked together. I think they are linked together, so feel free to meander back and forth. Judge Fletcher, the answer to your question is that the two facts that you point out, one, that the information was turned over before the return date, and two, that it was done before there was an opportunity for a motion to quash to have been brought, underscores the problem with using an invalid subpoena in this context. I mean, essentially what you have here is really a creative hacking mechanism. Well, let's talk about those two facts, because I think they are important. The return date, what is the significance of the return date as far as you understand? That's the date by which the documents signed under the subpoena have to be produced. In other words, if you don't produce them by that date, or if you produce them at a later point in time, you are in contempt. Nothing says you can't produce them. The subpoena is immediately effective. You have some time to comply, but if you don't want to wait, you couldn't satisfy the subpoena by providing it early. There's no violation, right? That's true, generally. How about the second fact that Judge Fletcher asked about? The chance, the right, or the opportunity for your clients to object. Does that bear the validity of the subpoena? Absolutely, because to the extent that the subpoena is overbroad and later found to be patently unlawful, the attorneys who should have had an opportunity to object but didn't have an opportunity to object because the time frame was too short before they could put that motion on file were essentially stuck. Netgate took the subpoena, and in this respect, the facts of the case are very important. Netgate received the subpoena, not knowing what to do with it, called counsel for the appellees in this action and said, I have this subpoena, what am I supposed to do? The response was, produce the documents. That's right, isn't it? That is right. Netgate went on to explain that the volume of documents that would be responsive to this overbroad subpoena was so voluminous that it was almost impracticable to do. So what it offered was to provide an early sample of the e-mail, which it knew was going to contain the electronic private e-mail communications of some 18 users, and it said, should I do this, essentially. And what counsel did without notifying accountants, counsel, or trial court, was say, yes, do that. They were happy with that. Why should they not do that? Is there anything, did they have a duty to notify an adverse party? The magistrate's result found that, yes, counsel did have a duty, and that's why sanctions were awarded. I'm sorry, did they have a duty to notify? Part of the problem with the subpoena and part of what made it invalid was that counsel for the appellants in this case and the trial court didn't have an opportunity to make a motion to quash, didn't have an opportunity to stop the uploading of that sample of e-mails because notice was never given. Appellant's counsel had no idea that it was going to happen, while appellee's counsel did and did nothing to notify and thereby essentially tied the appellant's counsel's hands and his hands in the trial court and prevented that motion to quash, which otherwise might have been the remedy. And you're claiming rest of the card on the issue of the propriety, of the validity of that? Yes, essentially. You're saying what the magistrate judge held, that they had a duty to notify, the police had a duty to notify, especially the card on it, and you argue that that does the subpoena invalid because they didn't comply with one of the rules. And invalidates the authorization for the purposes of the PCPA, which then negates the exception and that's why it doesn't apply in this case. Well, I'm reading, in reading your brief, doesn't it boil down to you're asking us whether through 2701C the word is no more than can? No. No? You keep saying you have to give permission to the user. To the extent that the service provider can provide authorization, that authorization has to be valid authorization. I'm not saying that there are no situations in which a facility provider can provide that access. So if this subpoena had been upheld by the court, the court took a look at the subpoena and said perfectly good subpoena, then you would get permission? Yes. So the act of, the fact, the invalidation of the subpoena is what creates changes. The invalidity of the subpoena and the unlawfulness, the inability to get into an otherwise private server is what makes the case. You've got 49 seconds. Would you like to save it for the final? I'll save that for the final. Thank you, Matt. Good afternoon, Your Honor. My name is Rob White and I'm a fellow counsel for Attalee Alwin and Ferry Jones. On the factual issue of what happened on the Medicaid server, the court will find at Excerpt of Record 580, a portion of Paragraph 39 of the complaint. Starting at Line 1 of Excerpt of Record 580. Excuse me, this is in... Volume 1, I believe. Volume 1. I'm sorry, going to Your Honor. Volume 2, Excerpt of Record 580. Base 7, 580? Yes. Excuse me, Your Honor. Sure. 580. And which paragraph are we looking at? We're looking at Line 1 at the top of the page, two words in the end. Medicaid provided the confidential e-mail information to Quadney and Ferry Jones electronically. By uploading the data to the Medicaid website and then delivering to Quadney the URL that was necessary to access and view the information. In other words, Your Honor is correct, Judge Kuczynski is correct, that the information was not accessed directly from the e-mail account. It was copied and it was placed in the... Into Netscape's web server. Under some file space on the server, but not part of their e-mail function. Okay. Well, why then isn't the very copying, the accessing of the e-mails, which were originally found on the mail server and done by Medicaid, why isn't the access of Medicaid attributable to your client? Essentially what it is, it is if you're a messenger. Netgate acted for your client and said, okay, we'll copy this stuff. And in order to copy it, they have to access the server. And that would give the appellant a fine cause of action against Netgate under Section 2702 of the Act. You know, it's like hiring somebody to kill somebody else. You can get both. You don't have to just give it to the man. You give the guy who hired him as well. So if, in fact, Netgate was acting on behalf of Ferry Jones, when it took the mail from its mail server and copied it into its web server, then it is an agent, Ferry Jones is the principal, and basically Netgate's hands become Ferry Jones' hands. I don't see it as an agency relationship at all, Your Honor, because first, Congress makes a distinction under 2701. Well, didn't they do it as a result of a telephone conversation that they had where they said, we're going to comply with your subpoena. Here's our way in which we're going to comply with your subpoena. And counsel said, yeah, that's fine, that's great. You go ahead and do that. Go to your server, copy it, put it someplace where we can reach it. Why is it that when they do that, when they do the copying, they access their own mail server, why aren't they acting on behalf of Ferry Jones? No more acting on his behalf than when I ask this panel to affirm the judgment you're acting on my behalf. That doesn't create an agency relationship, Your Honor. There was a subpoena issue, a subpoena that was regular on the case. Under the Steward Communications Act, it is up to either the party affected or the ISP in this case to grant access. And in one of the cases in our brief, Sherman v. Sultan, the District Court for the Eastern District of Michigan notes that the party that gains access, the party in Ferry Jones' position, is under no obligations under the Steward Communications Act with respect to what that person does with the information. The party that has obligations as to what's done with the information is the ISP under 2702. And one of the things that frankly mystifies me throughout here is, there's a good lawsuit here against Medicaid. There's no lawsuit here against Ferry Jones. Well, your client didn't give proper notice to the other side. I agree, and I do not for one moment defend that. That was an unprofessional act, and it was wrong. In bad faith. That is what the magistrate judge found. I concede that, and I acknowledge it. But the short answer to it is, is if you look at the circumstances, it was Medicaid's idea to offer the precinct. Again, I don't defend the acceptance of that proposal. I don't defend the failure to notify opposing counsel. But the issue here is authorization under the Steward Communications Act. Well, how could it be authorization as a denotative and a connotative meaning? How could this be authorization? It's more like acquiescence to a bad subpoena shoved out of your throat. No. Just trying to stay out of the way and comply. It was compliance. It wasn't authorization. Compliance would have been, to take your Honor's point, compliance would have been Medicaid had simply produced the subpoenaed material at the return date and said here it is. That's compliance. What if, and I know this is not what happened, but what if counsel had called up the principal ISP and said, you know, we have some information, very important information about your activities at the Motel Motel, and if you would not like to have that put on the Internet.
judges: B. Fletcher,kozinski,trott